# In the Matter of RAYMOND W. GEORGE TRUST, Sarah Arnott Ozement, Successor Trustee.

No. 98-304.
Heard January 14, 1999.
Submitted March 25, 1999.
As Amended on Denial of Rehearing October 21, 1999.
Decided September 23, 1999.
1999 MT 223.
56 St.Rep. 879.
296 Mont. 56.
986 P.2d 427.

For Appellant: **Stephen M. Barrett**, Kirwan & Barrett, Bozeman (argued).

For Respondent: **James P. Harrington**, Butte (Sarah Arnott Ozment); **Alan F. Blakely** (argued), Blakely & Velk, Missoula (Leo George); **William M. Kebe, Jr.** (argued), **Daniel D. Manson**, Corette, Pohlman & Kebe, Butte (Kenneth George and Shirley Bragg).

JUSTICE NELSON delivered the Opinion of the Court.

¶1    James Sievers (Sievers) appeals from the Order and Memorandum issued by the District Court for the Sixth Judicial District, Park County, that determined that Sievers was not entitled to a portion of the trust property of the Raymond W. George Trust and that Kenneth George (Kenneth), Shirley Bragg (Shirley), and Leo George (Leo) are each entitled to an equal share of the trust property that Sievers claimed. We affirm.

¶2    We address the following dispositive issues on appeal:

¶3    1. Did the District Court err in ruling that Sievers did not acquire an estate or interest in the trust property?

¶4    2. Did the District Court err in ruling that the doctrines of judicial admissions, collateral estoppel, res judicata, and judicial estoppel did not bar Kenneth, Shirley, and Leo from contesting Sievers' claim?

## Factual and Procedural Background

¶5    This is the third appeal to this Court of litigation involving the Raymond W. George Trust. See *Matter of Raymond W. George Trust* (1992), 253 Mont. 341, 834 P.2d 1378 and *Double AA Corp. v. Newland & Co.* (1995), 273 Mont. 486, 905 P.2d 138. The background leading to the present appeal is as follows:

¶6    Raymond W. George (Raymond) died testate on April 18, 1974. Raymond was survived by his wife, Olga George (Olga), and their four children: Maxine George (Maxine), Kenneth, Shirley, and Leo.

¶7    Raymond's will directed that most of his property, including a 1,400 acre ranch located south of Livingston, be placed in a trust. Raymond's will named Maxine the trustee and directed her to pay the income from the trust property to Olga. Raymond's will granted the trustee the power to sell the trust property. Raymond's will directed the trustee to distribute, at Olga's death, one-third of the real property in the trust to Maxine and two-ninths of the real property in the trust each to Kenneth, Shirley, and Leo. Raymond's will also granted Maxine a right of first refusal to Kenneth's, Shirley's, and Leo's shares of the real property.

¶8    In 1976, Maxine married Cleto McPherson (Cleto). Maxine died intestate in 1980. Cleto was her sole heir.

¶9    During the probate of Maxine's estate, a dispute arose between Cleto and Kenneth, Shirley, and Leo over whether Cleto was entitled to inherit Maxine's rights in the trust. To resolve the dispute, Kenneth, Shirley, and Leo each entered into an agreement with Cleto

wherein they agreed that Cleto was "entitled to take that share that [Maxine] would have taken under" Raymond's will. In return, Cleto agreed that he was not entitled to inherit Maxine's right of first refusal.

¶10   On April 11, 1988, Cleto conveyed by grant deed his "one-third … remainder interest" in the trust property to the Cleto McPherson Trust. On July 31, 1989, David DePuy, the trustee of the Cleto McPherson Trust, conveyed by grant deed the Cleto McPherson Trust's "one-third … remainder interest" in the trust property to Sievers. Cleto died in 1992.

¶11   Olga died in 1997. As a result, Sarah Arnott Ozement, the successor trustee, petitioned the District Court to terminate the trust. The trust property consisted of the 1,400 acre ranch.

¶12   Sievers then claimed that he was entitled to the one-third interest in the trust property that the Cleto McPherson Trust had transferred to him. Kenneth, Shirley, and Leo, however, objected to Sievers' claim. They asserted that Cleto did not have an estate or interest in the trust property to convey to the Cleto McPherson Trust, which, in turn, did not have an estate or interest in the trust property to convey to Sievers. Therefore, Kenneth, Shirley, and Leo maintained that Sievers did not have a one-third interest in the ranch. Hence, they asserted that they were each entitled, under the residuary clause of Raymond's will, to an equal share of the trust property that Sievers claimed.

¶13   The District Court ruled that Cleto did not acquire an estate or interest in the trust property. Hence, the District Court concluded that Cleto did not have an estate or interest in the trust property to transfer to the Cleto McPherson Trust and, consequently, that the Cleto McPherson Trust did not have an estate or interest in the trust property to transfer to Sievers. Because the court ruled that Sievers did not acquire an estate or interest in the trust property, it concluded that Kenneth, Shirley, and Leo were each entitled to an equal share of the property that Sievers claimed. Finally, the District Court summarily ruled that the doctrines of res judicata, judicial estoppel, judicial admissions, and collateral estoppel, did not bar Kenneth, Shirley, and Leo from contesting whether Sievers acquired an estate or interest in the trust property. Sievers appealed.

## Standard of Review

¶14   This Court reviews a district court's conclusions of law to determine whether the court interpreted the law correctly. *Delaware v.*

*K-Decorators*, 1999 MT 13, ¶ 27, [293 Mont. 97, ¶ 27], 973 P.2d 818, ¶ 27 (citing *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

### Issue 1.

¶15   *Did the District Court err in ruling that Sievers did not acquire an estate or interest in the trust property?*

¶16   Sievers argues that the District Court erred in ruling that he did not acquire an estate or interest in the trust property. Sievers maintains that, under the general rule of trust law, the remainder beneficiaries—including Cleto—had equitable estates and interests in the trust property and that they could convey those estates and interests. Since Cleto conveyed his interest in the trust property to the Cleto McPherson Trust which then conveyed its interest in the trust property to Sievers, Sievers argues that he acquired an estate and interest in the trust property. Since the trust is being terminated, Sievers asserts that he is entitled to a portion of the trust property.

¶17   Kenneth, Shirley, and Leo, however, argue that, under the plain language of § 72-24-201, MCA (1973), neither they nor Maxine, as remainder beneficiaries, had any estate or interest in the trust property when Olga was living. Instead, they maintain that their and Maxine's interest only allowed them to enforce the performance of the trust. Moreover, they assert that Cleto did not acquire any more interest in the trust than Maxine had. They therefore assert that Cleto did not have an estate or interest in the trust property to convey to the Cleto McPherson Trust. Consequently, they maintain that the Cleto McPherson Trust could not have conveyed any estate or interest in the trust property to Sievers and, therefore, that Sievers did not acquire an estate or interest in the trust property. We agree.

¶18   Section 86-108, RCM (1947) (recodified in 1978 as § 72-24-201, MCA and repealed in 1989) (hereinafter referred to as § 72-24-201) provides:

Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, *vests the whole estate in the trustees*, subject only to the execution of the trust. *The beneficiaries take no estate or interest in the property* but may enforce the performance of the trust. [Emphasis added.]

A substantively identical statute is presently codified at § 72-36-206(2), MCA.

¶19   To interpret a statute, we ascertain and declare what is in terms or in substance contained therein, neither inserting what has been

omitted nor omitting what has been inserted. Section 1-2-101, MCA. We first look to the plain meaning of the words the statute contains. *Seypar v. Water and Sewer Dist. No. 363*, 1998 MT 149, ¶ 26, 289 Mont. 263, ¶ 26, 960 P.2d 311, ¶ 26. When the statutory language is clear and unambiguous, the statute speaks for itself, and, consequently, we will not use other means of interpretation. "In the search for plain meaning, 'the language used must be reasonably and logically interpreted, giving words their usual and ordinary meaning.' " *Seypar*, ¶ 26 (quoting *Werre v. David* (1996), 275 Mont. 376, 385, 913 P.2d 625, 631).

¶20 ▇ The plain and unambiguous language in § 72-24-201, MCA, states that the beneficiaries of an express trust in real property take *no* estate or interest in the trust property and that the trustee has the *whole* estate in the trust property. The plain and unambiguous meaning of the words "no" and "whole" provide that the beneficiaries of an express trust in real property do not have any estate or interest—legal or equitable—in the trust property and that the trustee has the entire or complete interest and estate in the trust property. Thus, under the plain and unambiguous language in § 72-24-201, MCA, the beneficiaries of an express trust in real property do not have either a legal or an equitable estate or interest in the trust property; they may only enforce the performance of the trust.

¶21 ▇ In the instant case, then, under § 72-24-201, MCA, the remainder beneficiaries—including Cleto—did not have an estate or interest in the trust property. Since Cleto did not have an estate or interest in the trust property, he could not convey an estate or interest in the trust property to the Cleto McPherson Trust which, in turn, could not convey an estate or interest in the trust property to Sievers. Hence, the District Court correctly ruled that Sievers did not acquire an estate or interest in the trust property.

¶22 Despite the plain language in § 72-24-201, MCA, Sievers cites *In re Strode's Estate* (1946), 118 Mont. 540, 167 P.2d 579, in support of his argument that he acquired an estate or interest in the trust property. In *Strode's Estate*, the beneficiary of a testamentary trust asserted that the trust was void and, consequently, that she should get the trust property, which included real property. *Strode's Estate*, 118 Mont. at 542, 167 P.2d at 580. Although this Court cited § 6790 RCM, which was renumbered § 72-24-201, MCA, it did not discuss whether the beneficiary had an estate or interest in the trust property. Rather, this Court cited the statute, along with two other statutes, to explain

that the testamentary trust was valid. See *Strode's Estate*, 118 Mont. at 548-49, 167 P.2d at 583. This Court was not faced with, and thus did not address, whether the beneficiaries of an express trust in real property have an estate or interest in the trust property. Hence, Sievers' reliance on *Strode's Estate* is misplaced.

¶23    Sievers also cites cases from other jurisdictions wherein the courts held that the beneficiaries of express trusts in real property had estates or interests in the trust property despite statutes substantively identical to § 72-24-201, MCA. Sievers urges this Court to adopt the rationale of these cases and thus hold that the remainder beneficiaries had estates and interests in the trust property which they could convey.

¶24    In *Lynch v. Cunningham* (1933), 21 P.2d 154, 157, for example, a California District Court of Appeals relied on the Supreme Court of California's opinion in *Title Ins. & Trust Co. v. Duffill* (1923), 218 P. 14, and held that the beneficiaries of a trust in real property have an equitable estate or interest in the trust property despite a statute nearly identical to § 72-24-201, MCA. The *Lynch* court stated that the statute "has reference to legal interests and estates as distinguished from equitable interests and estates." *Lynch*, 21 P.2d at 157. The court then added the word "legal" to the statute so it stated that "[e]very express trust in real property ... vests the whole legal estate in the trustees" and that "[t]he beneficiaries take no legal estate or interest in the property ...." *Lynch*, 21 P.2d at 157.

¶25    In *Glaser's Elev. & Lmbr. Co. v. Lee Homes, Inc.* (1975), 237 N.W.2d 312, the Court of Appeals of Michigan held, without explanation, that the remainder beneficiaries of an express trust in real property had estates—vested remainders—in the trust property despite a statute substantively identical to § 72-24-201, MCA.[1] *Glaser's Elevator*, 237 N.W.2d at 314. Moreover, since a Michigan statute provided that expectant estates are alienable in the same manner as estates in possession, the court held that the remainder beneficiaries could mortgage their interest in the trust property. *Glaser's Elevator*, 237 N.W.2d at 314 (citation omitted).

---

1. Although the *Glaser's Elevator* court did not discuss the statute, it stated that the trial court ruled that the remainder beneficiaries did not have a mortgageable interest in the trust property under M.C.L.A. § 555.16, which, our research shows, is similar to § 72-24-201, MCA. See *Glaser's Elevator*, 237 N.W.2d at 314.

¶26    Leading commentators, however, have observed that cases like *Lynch*, *Title Ins. & Trust Co.*, and *Glaser's Elevator* "contradict [statutes like § 72-24-201, MCA] by holding that the beneficiary does have some kind of estate or interest in the trust property ...." George G. Bogert & George T. Bogert, Trusts and Trustees, Second Edition, § 184, p. 438 (1979). Similarly, one of these commentators has stated that "in some cases [statutes like § 72-24-201, MCA] have been given an interpretation which gives them the effect their literal wording would seem to require, in other cases [these statutes] seem to have been ignored by the courts." George T. Bogert, Trusts § 37 at 135-36 (6th ed. 1987) (citing *Title Ins. & Trust Co.* and *Lynch* as cases where the courts seemed to have ignored the statute).

¶27    These commentators point to the problem with Sievers' argument: we would have to "contradict" and "ignore" the plain and unambiguous language in § 72-24-201, MCA, to hold that the remainder beneficiaries—including Cleto—had estates or interests in the trust property. We would also have to follow the *Lynch* court and add the word "legal" to the statute. This Court's function, however, is to ascertain and declare what is in terms or in substance contained in a statute and *not insert what has been omitted* nor omit what has been inserted. Section 1-2-101, MCA (emphasis added). Hence, we decline to adopt the rational of these cases.

¶28    Sievers also cites *Town of Cascade v. Cascade County* (1926), 75 Mont. 304, 243 P. 806; *Stagg v. Stagg* (1931), 90 Mont. 180, 300 P. 539; and *Hames v. City of Polson* (1950), 123 Mont. 469, 215 P.2d 950, and, while acknowledging that these cases do not specifically address § 72-24-201, MCA, points out that this Court stated that the beneficiaries of a trust have equitable title to the trust property. *Town of Cascade*, 75 Mont. at 309, 243 P. at 808; *Stagg*, 90 Mont. at 188, 300 P. at 543; *Hames*, 123 Mont. at 475, 215 P.2d at 953-54. Hence, Sievers asserts that these cases support his contention that the remainder beneficiaries had interests and estates in the trust property. These cases, however, are distinguishable from the case at bar.

¶29    Neither *Town of Cascade* nor *Stagg* dealt with express trusts in real property. See *Town of Cascade*, 75 Mont. at 309, 243 P. at 808 (stating that, although trust fund was used to acquire a tract of property, the trust property was the fund established by a testamentary trust), and *Stagg*, 90 Mont. at 188, 300 P. at 543 (stating that the trust property was jewelry). Since § 72-24-201, MCA, only applies to express trusts in real property, it was inapplicable to the trusts at issue

in *Town of Cascade* and *Stagg*. Hence, Sievers' reliance on *Town of Cascade* and *Stagg* is misplaced.

¶30 In *Hames*, the Polson Country Club conveyed a tract of property to the City of Polson on the condition that the city use the property as a park and golf course. *Hames*, 123 Mont. at 473, 215 P.2d at 952. The club then leased back part of a building on the property and the golf course from the city. *Hames*, 123 Mont. at 473, 215 P.2d at 953. The club then opened a bar in the building wherein it sold beer and liquor and also operated slot machines. *Hames*, 123 Mont. at 474, 215 P.2d at 953.

¶31 Hames sued the city and alleged that the city held the property in trust for the public and that the bar and slot machines interfered with the public's use of the property. *Hames*, 123 Mont. at 474, 215 P.2d at 953. This Court ruled that the Polson City Council held the property in trust and that the public was the beneficiary of the trust. *Hames*, 123 Mont. at 475, 215 P.2d at 953. This Court stated that the city council, as trustees, held the legal title to the trust property and that the public, as beneficiary, held the equitable title to the trust property. *Hames*, 123 Mont. at 475-76, 215 P.2d at 954.

¶32 Even so, the issue in *Hames* was not whether the beneficiary of the trust had an estate or interest in the trust property. Rather, after stating that the public, as beneficiary, had equitable title to the trust property, the *Hames* court discussed the public's ability to enforce the terms of the trust. *Hames*, 123 Mont. at 476-78, 215 P.2d at 954-56. The *Hames* court was not faced with, and thus did not address, whether the beneficiary of an express trust in real property had an estate or interest in the trust property. Thus, this Court's statement in *Hames* that the beneficiaries of a trust have equitable title to the trust property cannot be construed to mean that the beneficiaries of an express trust in real property have an estate or interest in the trust property which they can convey. Rather, the statement can only be construed to mean that a beneficiary may enforce the terms of the trust. Accordingly, Sievers' reliance on *Hames* is misplaced.

¶33 In sum, under the plain and unambiguous language in § 72-24-201, MCA, the District Court correctly determined that Cleto did not have an estate or interest in the trust property and, therefore, that he could not transfer an estate or interest in the trust property to the Cleto McPherson Trust, which, in turn, could not transfer an estate or interest in the trust property to Sievers. Accordingly, we affirm

the District Court's ruling that Sievers did not acquire an estate or interest in the trust property.

## Issue 2.

¶34 *Did the District Court err in ruling that the doctrines of judicial admissions, collateral estoppel, res judicata, and judicial estoppel did not bar Kenneth, Shirley, and Leo from contesting Sievers' claim?*

¶35 Sievers asserts that the doctrines of judicial admissions, collateral estoppel, res judicata, and judicial estoppel bar Kenneth, Shirley, and Leo from contesting his interest in the trust property. Kenneth, Shirley, and Leo, however, argue that they have not litigated the issue of whether Sievers acquired an estate or interest in the trust property and that they made no judicial admissions regarding the remainder beneficiaries' estates or interests in the trust property. They therefore assert that these doctrines do not bar them from asserting that Sievers did not acquire an estate or interest in the trust property.

## A.

### Judicial Admissions

¶36 A judicial admission is "an express waiver made in court by a party or his attorney conceding the truth of an alleged fact." *DeMars v. Carlstrom* (1997), 285 Mont. 334, 337, 948 P.2d 246, 248 (citing *Rasmussen v. Heebs Food Center* (1995), 270 Mont. 492, 497, 893 P.2d 337, 340). A judicial admission "has a conclusive effect upon the party who makes it, and prevents that party from introducing further evidence to 'prove, disprove, or contradict the admitted fact.' " *DeMars*, 285 Mont. at 337, 948 P.2d at 248 (quoting *Rasmussen*, 270 Mont. at 497, 893 P.2d at 340).

¶37 A judicial admission is not binding unless it is an unequivocal statement of fact. *DeMars*, 285 Mont. at 337, 948 P.2d at 248 (quoting *Kohne v. Yost* (1991), 250 Mont. 109, 113, 818 P.2d 360, 362). Hence, "[f]or a judicial admission to be binding upon a party, the admission must be one of fact rather than a conclusion of law or the expression of an opinion." *DeMars*, 285 Mont. at 338, 948 P.2d at 249 (citing *Larson v. A.T.S.I.* (Colo.App. 1993), 859 P.2d 273, 275-76 and *Kohne*, 250 Mont. at 113, 818 P.2d at 362).

¶38 In the instant case, Sievers points out that Shirley testified in an earlier case she owned an interest in the trust property and also that Cleto acquired an interest in the trust property. Sievers asserts

that these statements are judicial admissions and, consequently, that they are binding on Kenneth, Shirley, and Leo.

¶39     These statements, however, are not statements of fact. Rather, these statements are conclusions of law. Therefore, because Shirley's statements that she owned an interest in the trust property and that Cleto acquired an interest in the trust property were not statements of fact, we hold that her statements were not judicial admissions. See *DeMars*, 285 Mont. at 338, 948 P.2d at 249.

¶40     Sievers also notes that Kenneth, Shirley, and Leo agreed that Cleto "was entitled to that share that [Maxine] would have taken" under Raymond's will. Sievers apparently maintains that these agreements are judicial admissions that Cleto acquired an interest in the trust property.

¶41     ▮ Notwithstanding, these agreements are not statements of fact and, thus, are not judicial admissions. Accordingly, we conclude that neither Shirley's testimony nor the agreements are judicial admissions and, therefore, that neither Shirley's statements nor the agreements bar Kenneth, Shirley, and Leo from contesting Sievers' interest in the trust property.

## B.

### *Collateral Estoppel*

¶42     Collateral estoppel, or issue preclusion, bars a party to a prior lawsuit, or a party in privity with the earlier party, from re-litigating an issue which was decided in the prior suit. *Rafanelli v. Dale*, 1998 MT 331, ¶ 10, 292 Mont. 277, ¶ 10, 971 P.2d 371, ¶ 10 (citing *Haines Pipeline Const. v. Montana Power* (1994), 265 Mont. 282, 287-88, 876 P.2d 632, 636). See also *Fadness v. Cody* (1997), 287 Mont. 89, 95-96, 951 P.2d 584, 588 (citing *Holtman v. 4-G's Plumbing and Heating* (1994), 264 Mont. 432, 439, 872 P.2d 318, 322). A party claiming that collateral estoppel bars another party from re-litigating an issue must show: (1) that the issue decided in the prior suit is identical to the issue presented in the action in question; (2) that there was final judgment on the merits in the prior suit; and (3) that the party against whom the plea is now asserted was a party or in privity with a party to the prior suit. *Rafanelli*, ¶ 10. See also *Fadness*, 287 Mont. at 96, 951 P.2d at 588.

¶43     To satisfy the first and most important element, the party asserting collateral estoppel must show that the "identical issue" or "precise question" was litigated in the prior suit. *Fadness*, 287 Mont.

at 96, 951 P.2d at 588-89 (citing *Holtman*, 264 Mont. at 438, 872 P.2d at 322 and *Anderson v. State* (1991), 250 Mont. 18, 21, 817 P.2d 699, 702). We compare the pleadings, evidence, and circumstances of the two actions to determine whether the issues are identical. *Fadness*, 287 Mont. at 96, 951 P.2d at 589 (citing *Aetna Life Ins. Co. v. McElvain* (1986), 221 Mont. 138, 146, 717 P.2d 1081, 1086).

¶44    Sievers asserts that the issue in the case at bar was litigated when Cleto claimed that he was entitled to inherit Maxine's interest in the trust. Hence, Sievers claims that Kenneth, Shirley, and Leo are barred by the doctrine of collateral estoppel from re-litigating this issue.

¶45    In the case at bar, the issue being litigated is whether Cleto had an estate or interest in the trust property. The issue in the earlier case, however, was whether Cleto, as Maxine's sole heir, was entitled to inherit Maxine's rights in the trust. Hence, we hold that the precise issue was not litigated in the prior suit.

¶46    ▮▮ Moreover, the district court judge in the earlier case did not decide the issue of whether Cleto was entitled to inherit Maxine's interest in the trust. Rather, Kenneth, Shirley, and Leo settled their dispute with Cleto. Thus, even though the district court stated in the final distribution of Maxine's estate that she had a remainder interest in the trust property, the district court did not have that issue before it and, thus, did not decide that issue. Accordingly, the doctrine of collateral estoppel does not bar Kenneth, Shirley, and Leo from contesting Sievers' interest in the trust property.

## C.

### *Res Judicata*

¶47    "[R]es judicata is a final judgment which, when rendered on the merits, is an absolute bar to a subsequent action between the same parties or those in privity with them, upon the same claim or demand." *Scott v. Scott* (1997), 283 Mont. 169, 175, 939 P.2d 998, 1001 (citing *Fiscus v. Beartooth Electric Cooperative, Inc.* (1979), 180 Mont. 434, 436, 591 P.2d 196, 197). The doctrine bars a party from re-litigating a matter that the party has already litigated and from re-litigating a matter that the party had the opportunity to litigate in an prior case. *City of Bozeman v. AIU Ins. Co.* (1995), 272 Mont. 349, 354, 900 P.2d 929, 932 (quoting *State ex rel. Harlem Irrigation District v. Montana Seventeenth Judicial District Court* (1995), 271 Mont. 129, 894 P.2d 943, 946). Res judicata is based on the policy that there

must be some end to litigation. *Glickman v. Whitefish Credit Union Ass'n*, 1998 MT 8, ¶ 20, 287 Mont. 161, ¶ 20, 951 P.2d 1388, ¶ 20. A claim is res judicata if: (1) the parties or their privies are the same; (2) the subject matter of the claim is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and issues. *Glickman*, ¶ 20 (citing *Loney v. Milodragovich, Dale & Dye, P.C.* (1995), 273 Mont. 506, 510, 905 P.2d 158, 161).

¶48    In the instant case, while Sievers has shown that the district courts and this Court stated in the prior litigation involving the Raymond W. George Trust that he had an interest in the trust, he has not shown that he and Kenneth, Shirley, and Leo have litigated the issue of whether he acquired an estate or interest in the trust property. The issues in the first case involving the trust were whether Shirley, who was the trustee at the time, had the right and authority to sell the ranch; whether she had to specifically perform a contract she had entered into to sell the property; and whether an injunction that enjoined logging the trust property was proper. *Matter of Raymond W. George Trust* (1992), 253 Mont. 341, 342, 834 P.2d 1378, 1379. The issues in the second case involving the trust were whether after remand, the trustee had to specifically perform the contract to sell the trust property and whether Sievers acquired a first option to purchase the trust property. *Double AA Corp. v. Newland & Co.* (1995), 273 Mont. 486, 488, 905 P.2d 138, 139.

¶49    The issue in the present case, however, is whether Cleto and then Sievers acquired an estate or interest in the trust property. While the subject matter of the litigation—the Raymond W. George Trust—is the same as the earlier litigation, the issue raised in this instant case is not the same issue that was raised in the earlier cases. Hence, the doctrine of res judicata does not bar Kenneth, Shirley, and Leo from contesting whether Sievers acquired an estate or interest in the trust property.

¶50    ■ Moreover, Sievers has not shown that Kenneth, Shirley, and Leo had the opportunity to litigate the issue of whether he had an estate or interest in the trust property. The resolution of the earlier cases did not require either the district court or this Court to decide whether Sievers acquired an estate or interest in the trust property. Accordingly, we hold that Kenneth, Shirley, and Leo did not have the opportunity to litigate the issue in the case at bar in the earlier cases. See *Loney*, 273 Mont. at 510, 905 P.2d at 161 (stating that party had

opportunity to litigate the issue raised in the case because the issue was inseparable from the issue presented in the earlier case). Accordingly, we hold that the doctrine of res judicata did not bar Kenneth, Shirley, and Leo from litigating whether Sievers acquired an estate or interest in the trust property.

## D.

### *Judicial Estoppel*

¶51   The doctrine of judicial estoppel binds a party to his or her judicial declarations, and precludes a party from taking a position inconsistent with them in subsequent cases. *Fiedler v. Fiedler* (1994), 266 Mont. 133, 139, 879 P.2d 675, 679 (citing *Traders State Bank of Poplar v. Mann* (1993), 258 Mont. 226, 242, 852 P.2d 604, 614). A party claiming that judicial estoppel bars another party from re-litigating an issue must show that: (1) the other party had knowledge of the facts at the time he or she took the original position; (2) the other party succeeded in maintaining the original position; (3) the position presently taken is inconsistent with the original position; and (4) the original position misled the party so that allowing the other party to change its position would injuriously affect the party. *Fiedler*, 266 Mont. at 140, 879 P.2d at 679 (citing *Mann*, 258 Mont. at 243, 852 P.2d at 614).

¶52   Sievers asserts that the doctrine of judicial estoppel bars Kenneth, Shirley, and Leo from taking the position that they did not have an interest in the trust property when Olga was living. Sievers claims that Kenneth, Shirley, and Leo took the position that they had interests in the trust property when they agreed that Cleto could take what Maxine would have taken under Raymond's will.

¶53   █ Sievers, however, has not shown that Kenneth, Shirley, or Leo took a position inconsistent with their position in the instant case. Sievers maintains that Kenneth's Shirley's, and Leo's agreements with Cleto show that they "agreed that Cleto was entitled to Maxine's ... remainder interest" in the trust property. Notwithstanding, during their dispute with Cleto, Kenneth, Shirley, and Leo took the position that Cleto was not entitled to inherit Maxine's rights in the trust and that Cleto was not entitled to inherit Maxine's right of first refusal. To resolve the dispute, Kenneth, Shirley, and Leo agreed that Cleto was entitled to inherit what Maxine would have inherited under Raymond's will and Cleto agreed that he was not entitled to inherit Maxine's right of first refusal. The agreements are devoid of any evidence that Kenneth, Shirley, and Leo took the position that Cleto

acquired an estate or interest in the trust property. Accordingly, the doctrine of judicial estoppel does not prevent Kenneth, Shirley, and Leo from contesting Sievers claim to the trust property.

¶54    In sum, neither judicial admissions, collateral estoppel, res judicata, nor judicial estoppel bar Kenneth's, Shirley's, or Leo's claim that Sievers did not acquire an estate or interest in the real property. Accordingly, we affirm the District Court.

¶55    Affirmed.

CHIEF JUSTICE TURNAGE, JUSTICES LEAPHART, REGNIER, TRIEWEILER, HUNT and DISTRICT JUDGE MIZNER, sitting for JUSTICE GRAY concur.